CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 16 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GIFFORD JOHNSON, | CASE NO. 7:11CV00416 |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| vs. | |
| REGINA KILGORE, ET AL., | By: James C. Turk |
| | Senior United States District Judge |
| Defendants. | |

Gifford Johnson, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison nurses were deliberately indifferent to his serious medical need for emergency treatment of his pain, related to an infection. Defendants filed a motion for summary judgment, which they later supplemented with executed affidavits and an amended memorandum of law.[1] Johnson responded to defendants' motion, making the matter ripe for disposition. Upon review of the record, the court finds that defendants' motion for summary judgment must be granted, and plaintiff's motion to strike must be denied.

## I. Background

### A. Plaintiff's Allegations and Evidence

Johnson is an inmate at Red Onion State Prison ("Red Onion"), a prison facility operated by the Virginia Department of Corrections ("VDOC"). The defendants, Regina Kilgore, Patricia Adams, and Helen Mullins, are nurses at Red Onion.

---

[1] In support of their motion for summary judgment (Docket Entry ("DE") 24), the defendants present the affidavit of Vicki Phipps, with true and correct copies from Johnson's medical records attached; the affidavits of Regina Kilgore, Patricia Adams, and Helen Mullins; and the affidavit of Fonnie Taylor, with true and correct copies of grievance records attached. Plaintiff's allegations and evidence are contained in the following documents: the verified complaint (DE 1); amended complaint (DE 7); and two affidavits (DE 15 & 26-1).

On June 12, 2011, Johnson filed Emergency Grievance #067456, stating: "I woke up to [agonizing] pain in my stomach and penis. It fee[s] like someone has kick[ed] me in my testicles and it burn[s] when I urinate." (ECF No. 2, p. 3.) Nurse Kilgore returned the emergency grievance to Johnson with the following written response: "Not an emergency–file proper paperwork." (Id.)

On June 17, 2011, Johnson filed Emergency Grievance #065242, stating that he had filed a request form on June 15, 2011 to be seen by the doctor, but the pain medication he had been taking had run out. Johnson stated that he needed to have the medicine renewed until he saw the doctor, because the pain in his stomach and penis was "causing [him] a lot of suffering." (ECF No. 2, p. 9.) Nurse Adams returned the grievance to Johnson, indicating that his grievance did not meet the definition for an emergency and advising him: "Please fill out proper paperwork to voice your complaints." (Id.) On June 21, 2011, a doctor diagnosed Johnson with an intestinal infection and prescribed an antibiotic.

On July 6, 2011, Johnson filed Emergency Grievance #067479, stating: "About 5 minutes ago I went to urinate and it had blood in it & my lower stomach and testicles are hurting really bad." (ECF No. 7-1, p. 1.) Nurse Mullins returned his grievance, stating: Not an emergency. Place proper papers."

Johnson claims that Nurse Kilgore and Nurse Adams, after receiving his emergency grievance, refused to adequately assess his condition despite his complaint of "excruciating and severe pain," failed to perform a urine test, and thus delayed his access to appropriate treatment, which constituted deliberate indifference to his serious medical need. Johnson asserts that the doctor's diagnosis of an infection on June 21, 2011 proves that Johnson's condition was serious and "even a lay person would easily recognize the necessity for a doctor[']s attention." (Compl.

2

4.) Johnson claims that Nurse Mullins intentionally failed to provide diagnostic care (a urine test) and prevented Johnson from receiving recommended treatment (pain medication). Johnson seeks monetary damages.

**B. Defendants' Evidence**

Each of the defendants offers her affidavit, stating the actions that she took and the decisions that she made after receiving Johnson's emergency grievance, based on her personal recollection as refreshed by reviewing Johnson's medical records. Inmates may request medical treatment under either the Sick Call process or on an Emergency Grievance basis. (Mullins Affid. ¶13.) The emergency grievance form used at Red Onion states that this remedy is to address "situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm." Inmates are to use the Sick Call process to request treatment on a regular (nonemergency) basis. (Id. 15.) At Sick Call, the inmate may see the nursing staff, who assess or treat the inmate under nursing guidelines or put the inmate on the doctor's list for further assessment. (Id.)

Nurse Kilgore received Johnson's Emergency Grievance #067456, dated June 12, 2011, complaining of pain in his lower stomach and testicles and burning on urination. (Kilgore Affid.) After reviewing Johnson's medical record, Kilgore found there was no "emergency," as defined on the form, because there was no life-threatening or life-altering situation. (Id.) Mr. Johnson had been seen several times for this complaint by nursing staff and by the doctor, who had ordered tests and medications, including stomach medications. (Id.) After examining Johnson on June 9, 2011, Dr. Hopkins had ordered a testicle exam and medications, but did not order any medication for pain. (Adams Affid. ¶10.) Kilgore did not order tests because none were indicated at that time. (Kilgore Affid. ¶12.) Based on her assessment of Johnson's prior

3

and ongoing medical care for the condition of which he complained in the Emergency Grievance #067456, Nurse Kilgore returned the grievance to Johnson, marked that his complaint did not present an emergency, and advised him to file the proper paperwork. Mr. Johnson was seen by Nurse L. Gilbert on June 13, 2011, for his complaints of testicle pain and was placed on Tylenol 650 mg. twice a day for five days by verbal order of Dr. McBride.

Nurse Adams received and reviewed Johnson's Emergency Grievance #065242, dated June 17, 2011, in which he complained of pain in his stomach and testicles and requested that his pain medication be immediately renewed. (Adams Affid. ¶7-8.) Adams did not find that the situation Johnson described met the definition of an emergency or that any emergency treatment was needed, because Johnson was already on the pain medication Dr. McBride had ordered for him on June 13, 2011, and Dr. Hopkins had already ordered a testicular examination. (Id. ¶9-10.) Based on this assessment, Adams returned Emergency Grievance #065242 to Johnson, indicating that the grievance did not state an emergency and that Johnson should use proper paperwork to voice complaints. (Id. 11.) Johnson then filed a proper request for treatment, was placed on the list to see the doctor, and was examined by a doctor on June 21, 2011. (Id. 12.)

Nurse Mullins received and reviewed two Emergency Grievances from Johnson, dated July 6, 2011, complaining of blood in his urine and pains in his stomach and testicles, and reviewed his medical records. (Mullins Affid. ¶7-8.) Johnson's medical chart noted that on July 3, 2011, Johnson had also complained of severe pain and swelling in his testicles; that Johnson was taking Naprosyn and Ciprofloxacin ("Cipro") for prostatitis; and that Dr. McBride had prescribed one dose of Tylenol, 650 mg, by mouth. (Id. ¶9.) A note dated July 5, 2011 indicated that Dr. McBride examined Johnson that day, reviewed his lab work, and found that H. pylori

4

antibodies were present.[2] The doctor prescribed Amoxicillin, Biaxin, 500 mg, and an increased dose of Prilosec, to start after the Cipro was completed. (Id. ¶10.) Because Johnson's medical chart showed had been seen by Dr. McBride on July 5, 2011 for the same complaints, and treatment had already been started, Mullins believed, in her judgment, that Johnson did not have an emergency need for further treatment on July 6, 2011, and that his requests for additional treatment should be addressed through the regular Sick Call process. (Id. ¶11.) Johnson's chart indicates that a nurse examined Johnson on July 7, 2011, at 8:15 a.m. for continued pain, discomfort on urination, and blood in the urine. (Id. ¶12.) The nurse performed a urinalysis, and the results were negative for infection. (Id.)

## II. Discussion

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant must present the basis for its motion and identify those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute, that the fact in contention is material (a fact that might affect the outcome of the suit under the governing law), and that the dispute is genuine (the evidence is such that a reasonable jury could return a verdict for the nonmovant). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[2] "H. pylori" is a bacteria in the stomach that can cause gastritis and ulcers. (Mullins Affid. ¶10.)

5

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

**B. Plaintiff's Motion to Strike**

Johnson moved to strike defendants' motion for summary judgment on the ground that several of the affidavits attached to the motion were not signed and the medical records were not "certified." The court finds no grounds on which to strike defendants' motion.

Counsel for defendants indicated in the motion for summary judgment itself that because of unusually slow mail service, the executed affidavits were not available when counsel filed the motion. Counsel expressly asked that defendants be allowed to substitute the executed affidavits once counsel received them in the mail. After Johnson filed his motion to strike, defendants moved to supplement their summary judgment motion with the executed affidavits, and the court granted this motion. Johnson does not argue that the affidavits now in the record are not properly executed.

Johnson also complained that the medical records could not be considered in support of the summary judgment motion because these records were not "certified." (M. Strike ¶2.) The court can only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e). Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Defendants submit the affidavit of Vicki Phipps, Director of Nursing at Red Onion, stating that the attached records are true and correct copies of medical records kept at Red Onion of medical treatment provided to Gifford Johnson in

6

June and July 2011. Thus, the court finds that the medical records are properly authenticated under Rule 901(a) and may be considered in addressing defendants' motion under Rule 56(e).

Defendants' summary judgment motion relies on properly executed affidavits and sufficiently authenticated medical records. Therefore, the court denies Johnson's motion to strike.

## C. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Nussle v. Porter, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the state provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006).

In their supplemental memorandum of law, defendants argue that Johnson did not exhaust available administrative remedies of his complaint that Nurse Kilgore was deliberately indifferent to his medical needs on June 23, 2011. Defendants admit that Johnson properly exhausted administrative remedies as to his claims that the nurses did not provide care in response to his emergency grievances filed on June 12 (Nurse Kilgore), June 17 (Nurse Adams), and July 6 (Nurse Mullins), 2011. These three instances are the subject of Johnson's § 1983

7

claims in this lawsuit, and he makes no § 1983 claim here concerning his interaction with Nurse Kilgore on June 23, 2011.[3]

## D. Deliberate Indifference to Medical Need

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Punishments or prison conditions are "repugnant to the Eighth Amendment" if they . . . involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations omitted). To prove that the course of medical treatment he received amounted to a constitutional violation, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Id. at 104-105. Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Id. at 105-106.

"[A] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotations omitted). An official acts with deliberate indifference if he was aware of facts from which he could draw an inference that a substantial risk of harm existed, drew that inference, and disregarded or responded unreasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Cloaninger v. McDevitt, 555 F.3d 324, 333 (4th Cir. 2009) (finding that where no genuine dispute exists as to defendant's conduct, [t]he only remaining question is whether that conduct was objectively reasonable, which is a question of law, not fact.").

---

[3] For the reasons stated in defendants' motion, if Johnson raised a claim concerning Nurse Kilgore's response to his grievance on June 23, 2011, Kilgore would be entitled to summary judgment.

8

A disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

### 1. Nurse Kilgore on June 12, 2011

Johnson does not dispute Kilgore's account of her conduct in response to his emergency grievance June 12, 2011. He argues that in responding as she did, she ignored a new serious medical need to which the grievance alerted her, namely, his pain. The court cannot agree. Kilgore based her response on her assessment of his present complaints in light of her review of his chart and her understanding of the medications and testing already prescribed for him by the doctor only a few days earlier for the same medical complaints. Kilgore made a professional judgment that Johnson's complaints of pain on June 12, 2011 did not threaten him with immediate risk of serious personal injury or irreparable harm so as to constitute an emergency need for additional treatment. Kilgore advised Johnson to follow Sick Call procedure, and when he did so, the nursing staff evaluated him the next day, and a doctor prescribed pain medication. Johnson's allegations state, at most, a disagreement with Kilgore's assessment that his reported pain did not constitute an emergency. Such disagreements do not support a deliberate indifference claim. Wright, 766 F.2d at 849.

Johnson also makes much of the fact that a week later, a doctor later interpreted test results to diagnose an intestinal infection for which Johnson was treated with antibiotics. This later medical diagnosis does not prove, however, that on June 12, 2011, Kilgore knew Johnson needed different treatment than had already been prescribed for him. See, e.g., Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (finding no evidence showing that doctors

9

treating inmate knew about inmate's pituitary gland tumor, the court held doctors' failure to diagnose and treat inmate for the tumor did not state Eighth Amendment claim, even though inmate ultimately went blind). Finding no genuine issue of material fact on which Johnson could persuade a reasonable juror to find in his favor, the court concludes that Nurse Kilgore is entitled to summary judgment as a matter of law, and grants her motion.

### 2. Nurse Adams on June 17, 2011

Johnson's emergency grievance on June 17, 2011, asked for renewal of a pain medication prescription. Nurse Adams did not find that this request presented a need for emergency treatment, because the doctor had already prescribed pain medication for Johnson, to be taken twice daily. The undisputed medical records presented indicate that Johnson continued to receive pain medication in the days following his grievance,[4] and Johnson does not allege that he missed any doses of the medication. The records also indicate that the medical staff closely monitored Johnson's condition and pursued testing and treatment in an effort to alleviate his pain. Johnson's disagreement with Adams' assessment that his complaint on June 17, 2011, did not fit the definition of an emergency need for medical attention is not sufficient to support a finding of deliberate indifference. Wright, 766 F.2d at 849. Finding no genuine issue of material fact on which Johnson could persuade a reasonable juror to find in his favor, the court concludes that Nurse Adams is entitled to summary judgment as a matter of law, and grants her motion.

### 3. Nurse Mullins on July 6, 2011

When Mullins reviewed Johnson's emergency grievances on July 6, 2011, complaining of blood in his urine and pains in his stomach and testicles, she looked to his medical records.

---

[4] The Medication Administration Record ("MAR") indicates that Johnson had one five-day prescription of Tylenol that ran from June 13-18, 2011 and a second five-day prescription that ran from June 18-23, 2011. (ECF No. 24-2, p. 3.) Johnson does not allege that he missed a morning or afternoon dose of his pain medication, and the record does not reflect that he did.

10

Mullins saw that a doctor had examined Johnson for these complaints, received test results, and prescribed several different medications in the three days prior, and treatment had already been started. Based on these facts, Mullins made a professional judgment that Johnson did not have an emergency need for further treatment on July 6, 2011. Johnson's disagreement with Mullins' assessment is not sufficient to support a finding of deliberate indifference. Wright, 766 F.2d at 849. Johnson's assertion that Mullins should have conducted a urine test on July 6 is belied by the record, since the next day, such a test failed to show any infection. Finding no genuine issue of material fact on which Johnson could persuade a reasonable juror to find in his favor, the court concludes that Nurse Mullins is entitled to summary judgment as a matter of law, and grants her motion.[5]

### III. Conclusion

Taking the undisputed evidence in the light most favorable to Johnson, the court cannot find any disputed material fact on which he could persuade a jury to find that the defendants conduct was an objectively unreasonable response to Johnson's medical needs as reflected by his symptoms and prior assessment and treatment.[6] Cloaninger, 55 F.3d at 334. For the reasons stated, the court denies plaintiff's motion to strike, and grants defendants' motion for summary judgment.

---

[5] For the same reasons that the defendants are entitled to summary judgment on the merits of Johnson's Eighth Amendment claims, they are also entitled to qualified immunity as to these same claims. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (finding state officials entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated plaintiff's clearly established constitutional right).

[6] The court does not find that Johnson is attempting to raise state law claims, such as medical malpractice, based on defendants' conduct. To the extent that Johnson is attempting to do so, however, defendants are entitled to summary judgment, because Johnson fails to present an expert certification of merit in support of his claims as required to litigate a medical malpractice claim under the Virginia Medical Malpractice Act ("VMMA"). See Virginia Code § 8.01-20.1; Parker v. United States, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007) (finding pro se litigants held to same requirement for expert certification under VMMA as any other litigant).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 16th day of August, 2012.

*James C. Turk*
Senior United States District Judge